IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHERI SQUIER,                                )    Civil No.: 6:15-cv-01243-JE
                                             )
                          Plaintiff,         )    OPINION AND ORDER
                                             )
             v.                              )
                                             )
NANCY A. BERRYHILL,[1]                       )
Acting Commissioner of Social Security,      )
                                             )
                          Defendant.         )
_____      )

>        Merrill Schneider
>        Schneider Kerr & Robichaux
>        P.O. Box 14490
>        Portland, OR 97293
>
>              Attorney for Plaintiff
>
>        Billy J. Williams, U.S. Attorney
>        Janice Hebert, Asst. U.S. Attorney
>        1000 S.W. 3rd Avenue, Suite 600
>        Portland, OR 97204

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 20, 2017, and is therefore substituted as the Defendant in this action pursuant to Fed. R. Civ. P. 25(d).

Lorna Li
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

  Attorneys for Defendants

JELDERKS, Magistrate Judge:

  Plaintiff Cheri Squier brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Disability Insurance Benefits (DIB) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits. The Commissioner concedes reversible error and moves the Court to remand for additional administrative proceedings.

  For the reasons set forth below, the Commissioner's decision is reversed and the motion for remand for additional proceedings is granted.

## **Procedural Background**

  Plaintiff filed an application for a period of disability and DIB on January 30, 2012, alleging she had been disabled since July 19, 2010.

  After her claims were denied initially and upon reconsideration, Plaintiff timely requested an administrative hearing.

  On January 10, 2014, a video hearing was held before Administrative Law Judge (ALJ) John Michaelsen.  Plaintiff and Kathleen O'Gieblyn, a vocational expert (VE), testified at the hearing. Plaintiff was represented by counsel.

  In a decision dated February 14, 2014, ALJ Michaelsen found that Plaintiff was not disabled within the meaning of the Act.

On May 11, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born in 1969 and was 44 years old at the time of the ALJ's decision. Plaintiff completed the 11th grade and has past relevant work as a medical records clerk, office clerk, managed care coordinator, managed care clerk and office specialist clerk.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA)

regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant.  *Tackett*, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  *Id.*

## **ALJ's Decision**

As an initial matter, the ALJ found that Plaintiff met the requirements for insured status

through December 31, 2015.

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of her alleged onset of disability, July 19, 2010.

At the second step, the ALJ found that Plaintiff had the following severe impairments: obesity, lupus, fibromyalgia, degenerative disc disease of the cervical and lumbar spine, carpal tunnel syndrome, anxiety and depression.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment as set out in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC). He found that Plaintiff retained the capacity to perform sedentary work but was limited to no more than occasional stooping, kneeling or crouching; to no more than frequent handling, grasping, gripping, and fingering bilaterally, and to simple, repetitive, routine tasks requiring no more than the occasional interaction with the general public.  He also found that Plaintiff should avoid any crawling or climbing and would need to avoid concentrated exposure to cold, heights, moving machinery and similar hazards, as well as fumes, dust, gases, poor ventilation and other noxious odors. In making his determination, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.

At the fourth step, based on testimony from the VE, the ALJ found that Plaintiff could not perform any of her past relevant work.

At the fifth step of the disability analysis, the ALJ found that Plaintiff could perform other jobs that existed in significant numbers in the national economy. Based upon testimony from the VE, the ALJ cited document preparer and surveillance system monitor as examples of

such work.  Having concluded that Plaintiff could perform other work, the ALJ found that

Plaintiff had not been under a disability within the meaning of the Act since July 19, 2010.

### Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A).  Claimants bear the initial burden of establishing disability.  *Roberts v. Shalala*,

66 F.3d 179, 182 (9th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1122 (1996).  The Commissioner bears

the burden of developing the record,  *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991),

and bears the burden of establishing that a claimant can perform "other work" at Step Five of the

disability analysis process.  *Tackett*, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole.

42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Andrews*, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or

detracts from the Commissioner's decision.  *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir.

1986).  The Commissioner's decision must be upheld, however, even if "the evidence is

susceptible to more than one rational interpretation."  *Andrews*, 53 F.3d at 1039-40.

### Discussion

Plaintiff contends that the ALJ erred in improperly rejecting the opinions of her treating

doctor, treating physician's assistant and treating counselor; in making step five findings

inconsistent with her RFC; and in failing, without explanation, to include in her RFC a limitation to 1-2 step tasks as recommended by the state agency evaluators.

The Commissioner concedes that the ALJ's step five finding did not comply with the requirement that he resolve the conflict between a limitation to simple, routine or repetitive tasks and the Dictionary of Occupations Titles' (DOT) Level 3 Reasoning classification. The Commissioner also concedes that the ALJ did not consider a neuropsychological evaluation completed by Dr. Leah Schock in February 2012 and thus did not properly resolve all significant conflicts in the medical opinion evidence. The Commissioner also argues that, in light of the need for remand, the Commissioner should provide a more detailed discussion of the weight given to opinions of the state agency evaluators and explain any material difference between the 1-2 step limitation they proffered and the VE's opinion that Plaintiff could perform jobs that required Level 3 Reasoning.

## I. Evaluating Medical and "Other Source" Opinions

As noted above, Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinions of her treating physician, physician's assistant and counselor.

### A. Applicable Standards

The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In reviewing an ALJ's decision, the court does not assume the role of fact-finder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990). An ALJ must

provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, *id.*, and must provide specific and legitimate reasons for rejecting opinions of an examining physician that are contradicted by another physician. *Andrews*, 53 F.3d at 1043. A non-examining physician's opinion "cannot by itself constitute substantial evidence that justifies rejection of the opinion of either an examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir.1995).

Care providers who are not "acceptable medical sources," such as physicians' assistants and counselors are still considered sources under the regulations that the ALJ can use in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d). An "other" source may not, however, be given "controlling" weight as a treating medical source, *See* SSR 06–03p; and an ALJ may discount the opinion of an "other source" by providing "germane reasons" for doing so. *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).

**B. Dr. Raphael Allred, MD**

Dr. Allred began treating Plaintiff in December 2007.  In a July 2011 letter in support of Plaintiff's disability application, Dr. Allred opined that Plaintiff became unable to work in July 2010 and wrote that Plaintiff

> has been diagnosed with inflammatory arthritis and joint destruction requiring high risk medication treatment and she has also been diagnosed with pseudo-dementia that causes severe difficulties with concentration. She continues to struggle with depression and anxiety and overall her quality of life is terrible. There are days that she struggles with basic daily activities of living and I do not foresee her returning to work any time in the next year.

Tr. 877.

Dr. Allred's opinion was contradicted by the opinions of other physicians and, therefore, the ALJ was required to provide specific and legitimate reasons for the weight assigned Dr.

Allred's opinion. The ALJ recognized Dr. Allred as a treating source but gave his opinion little weight as inconsistent with his own treatment notes and Plaintiff's presentation with treating sources. The Commissioner argues the ALJ was permitted to discount Dr. Allred's opinion because it offered only diagnoses and a disability conclusion. However, the ALJ himself did not offer this reason in support of his rejection of Dr. Allred's opinion and so this Court will not consider it as part of its review. *See Bray v. Commissioner*, 554 F.3d 1219, 1225 (9th Cir.2009)( "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.")(citations omitted).

Plaintiff argues that the ALJ impermissibly relied on a selective reading of the record to find isolated and intermittent instances of improvement or inconsistency with Dr. Allred's opinion. The ALJ noted that at a June 12, 2012 appointment, Plaintiff reported her mood was stable using a homeopathic remedy daily and benzodiazepine a couple times a week. He also noted that severe numbness in her right arm was linked to typing "too long," and that abdominal pain had improved with a modification in her prescribed medication.  The ALJ also noted that Dr. Allred was aware that Plaintiff had reported to other providers that she received RFA treatment[2] in May 2009 that relieved 75%-90% of her left side neck pain until approximately August or September 2013.

However, as Plaintiff notes, the isolated treatment notes to which the ALJ cites do not show substantial improvement in the impairments upon which Dr. Allred based his opinion

---

[2] RFA or radiofrequency ablation is a procedure whereby an electrical current produced by a radio wave is used to heat up a small area of nerve tissue, thereby decreasing pain signals from that specific area. *See* http://www.mayoclinic.org/tests-procedures/radiofrequency-neurotomy/basics/definition/prc-20013452

regarding Plaintiff's inability to work. The same note that indicated some mood stability with herbal supplements also reflected that the Plaintiff's treating neuropsychologist believed that Plaintiff still had cognitive deficits and that she could benefit from counseling to deal with her anxiety. The note also reflected continuing issues with myalgia and abdominal pain. Tr.650. The treatment note the ALJ cited for Plaintiff's right arm pain being related to typing too long also linked the severe numbness to "sleeping with her wrist cocked." and indicated that paresthesia in Plaintiff's left arm wasn't "much better." Tr. 846. Treatment notes regarding improvement in Plaintiff's abdominal pain are accompanied by increases in her other pain, as abdominal relief came with the cessation of certain pain medications. Tr. 659, 861, 864, 868.

Furthermore, the subsequent treatment records from Dr. Allred and other providers are not, as the ALJ asserts, inconsistent with Dr. Allred's opinion. Records reflect consistent reports of and treatment for myalgia, joint pain, stiffness, fatigue, depression, anxiety, and cognitive difficulties. Tr. 651, 653, 659, 662, 778, 782, 786, 790, 794-95, 798, 846, 860, 864, 868, 901, 909, 917, 921, 980, 1004. The ALJ's interpretation of the evidence represents a selective reading of both the record as a whole and the specific treatment notes upon which he relied. The ALJ erred in relying on only select portions of the evidence and failed to provide legally sufficient reasons for rejecting Dr. Allred's opinion.

## C. Tianna Welch, PA-C

Plaintiff became a patient with Deschutes Rheumatology in May 2009 and continued her treatment there through the disability application process. Physician's assistant Tianna Welch was Plaintiff's primary treatment provider at Deschutes. In a letter dated July 21, 2011, Ms. Welch wrote that Plaintiff

> had some improvement in her symptoms associated with lupus since her diagnosis, however I do not feel that her lupus is optimally treated. . . . [e]ven if

> she becomes asymptomatic for any lupus symptoms, which is highly unlikely
> even with optimal treatment, she still has significant symptoms from
> fibromyalgia, depression and cognitive difficulties. None of these have improved
> significantly with treatment of her lupus, and I do not anticipate them to improve
> in the future.

Tr. 891.

The ALJ found Ms. Welch's opinion to be inconsistent with her "candid observations and notations in the routine progress notes" and gave it little weight. Because Ms. Welch is not an acceptable medical source, the ALJ was only required to provide "germane" reasons for discounting her opinion. *Molina,* 674 F.3d at 1111. The ALJ noted that subsequent treatment notes indicated that Plaintiff's lupus did not need to be under further control, that prescribed prednisone was probably helping and that Ms. Welch indicated that her "guess" was that updated laboratory tests were "going to be normal." Tr. 30, 902.

Plaintiff argues that the ALJ's evaluation of the evidence failed to account for side effects from her medication, took treatment notes out of context and failed to consider those treatment notes which supported Ms. Welch's opinion. A thorough review of the record does reflect a waxing and waning of Plaintiff's symptoms, often associated with changes in her medication and situational stressors. However, the record also reflects that, contrary to Ms. Welch's opinion, Plaintiff's conditions did improve with treatment and her most recent treatment regimen was "helpful" and well tolerated. Tr. 902, 913, 917.  The ALJ is responsible for resolving conflicts and ambiguities in the medical evidence. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Under the circumstances, the ALJ reasons for discounting Ms. Welch's opinion were germane, and thus legally sufficient.

## D. Ann Martin, LCSW

In January 2014, Ms. Martin completed a form provided by Plaintiff's attorney in which she indicated she had been Plaintiff's treating mental health provider since May 6, 2013. Tr.

1028. Ms. Martin indicated that she interacted with Plaintiff two to four times per month. She identified Plaintiff's primary mental health diagnosis as an adjustment disorder with depression and anxiety. She identified symptoms of nervousness, fatigue, worry, jitters, depressed mood, hopelessness, and tearfulness. She opined that Plaintiff had extreme limitations in concentration, persistence and pace and marked limitations in social functioning, activities of daily living, and completing a normal work day and work week without interruptions from psychologically based symptoms. Ms. Martin also commented that Plaintiff's ability to tolerate workplace stress would be limited.

The ALJ found Ms. Martin's opinion to be inconsistent with contemporaneous routine treatment records and gave it little weight. After a thorough review of the record I conclude that the ALJ failed to provide a germane reason for rejecting this opinion. First, the ALJ cited to only one treatment note in support of his conclusion. An ALJ need not discuss all the evidence of record. *Vincent v. Heckler,* 739 F .2d 1393, 1394–95 (9th Cir.1984). However, reliance on one treatment note dated over a year prior to the opinion in question is an inadequate basis to support a conclusion that there were "notable discrepancies between the routine progress notes" and Ms. Martin's opinion. Tr. 32. Furthermore, I find persuasive Plaintiff's argument that the ALJ failed to cite to anything in that single treatment note that is actually inconsistent with Ms. Martin's opinion. The treatment note documents Plaintiff's anxiety, frustration, hopelessness and inability to function in the face of life and family stressors. This mirrors the conclusions set forth in Ms. Martin's opinion. The remainder of Ms. Martin's treatment notes also support her opinion, documenting significant mood issues of anxiousness, sadness, depression, fear, anger and feeling overwhelmed. Inconsistency with contemporaneous treatment records was, thus, not a germane reason for rejecting Ms. Martin's opinion and the ALJ provided no other basis for his conclusion.

This was error.

## II. Step Five Findings

Plaintiff contends that the ALJ erred at Step Five because the jobs he identified as Plaintiff being able to perform both required a Reasoning Level 3, which is inconsistent with Plaintiff's RFC which limits her to simple, routine, repetitive tasks. *See Zavalin v. Colvin*, 778 F.3d 842 (9th Cir. 2015). The parties agree that the ALJ erred in failing to recognize and resolve this inconsistency. Plaintiff argues that the record is fully developed and remand for an award of benefits is warranted. The Commissioner asserts that the record requires further development and, as in *Zavalin*, remand for further proceedings is necessary to allow the ALJ to address the conflict. I conclude that the ALJ's errors in evaluating the medical evidence have left the record ambiguous, such that remand for an award of benefits at this stage would be inappropriate. As discussed below, further proceedings are necessary to allow for full consideration and legally sufficient evaluation of the medical evidence and to provide the ALJ the opportunity to address, and resolve, with the assistance of a VE, any resulting conflicts.

## III. Remand

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g., Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir.1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).

In determining whether an award of benefits is warranted the court follows the "three-part credit-as-true standard." *Garrison v. Colvin*, 759 F3d 995, 1020 (9th Cir. 2014). Under this standard the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons

for rejecting evidence, (2) the record has been fully developed and further administrative proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id*. If a court concludes that a Plaintiff meets the three criteria of the credit-as-true standard, then the improperly discredited evidence is credited as true and remand for an award of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled with the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1020–1021 (citations omitted).

Here, the first requisite is met. The Commissioner concedes and I conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence and that his decision contained errors of law. However, I conclude that the second requisite is not met, as the record in this case is not fully developed. Given the ALJ's failure to consider the 2012 neuropsychological evaluation conducted by Dr. Leah Schock, his failure to reconcile inconsistencies between Plaintiff's RFC limitation to "simple, repetitive, routine tasks" and the Level 3 Reasoning required by the jobs he cited as other work Plaintiff could perform, and the significant conflicts in medical opinion that exist even if the improperly discredited opinions of Dr. Allred  and Ms. Martin are credited as true, the record is far from fully developed and it not clear that Plaintiff is, in fact, disabled.  Remand for further proceedings is, therefore, the appropriate remedy. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F3d 1090, 1105 (9th Cir 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

On remand, the ALJ shall (1) consider and weigh the opinion evidence of Dr. Schock, (2) either credit Dr. Allred's and Ms. Martin's opinions or provide legally sufficient reasons for their

rejection, (3) reasses Plaintiff's RFC if that is required by conclusions drawn based on

reconsideration of the evidence, (4) obtain additional VE testimony regarding what work

Plaintiff can do, if any, (5) resolve any remaining inconsistencies concerning Reasoning levels

that exist between the VE's conclusions and the DOT, and (6) conduct any additional

proceedings as indicated by the results of the foregoing instructions.

## Conclusion

For the reasons set forth above, the Commissioner's decision is REVERSED and the

motion for remand for further additional proceedings (#25) is GRANTED. This action is

REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for additional

administrative proceedings consistent with this Opinion and Order.

DATED this 24th day of March, 2017.

_____/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge